OPINION
{¶ 1} Appellant, Emanuel Shepherd, appeals the judgment entered by the Ashtabula County Court of Common Pleas. Appellant was convicted of one count of attempted murder, three counts of felonious assault, and four counts of assault. As a result, appellant was sentenced to an additional sixteen years and nine months in prison. He was already serving a previously imposed prison term of fifteen to sixty-five years for his convictions for rape, aggravated burglary, and robbery.
 {¶ 2} The incident giving rise to the instant matter occurred at the Lake Erie Correctional Institution, where appellant was an inmate. On November 5, 2001, Corrections Officers Douglas Fields and Michele Goodiel were working near the food hall. They noticed several inmates standing outside the door smoking cigarettes. Officer Fields and Officer Goodiel went outside to inform the inmates that they were not allowed to be outside at that time. While the officers were outside, appellant and his nephew, Orlando Shepherd ("Orlando"), went outside and told the officers they were going to have a cigarette.
 {¶ 3} The officers ordered all of the inmates, including Orlando and appellant, back into the food hall. At that time, Orlando pushed the door back into Officer Goodiel. Officer Goodiel told Officer Fields about the door incident, and Officer Fields yelled for "Shepherd" to come outside. Appellant went outside, but was informed that Officer Fields wanted Orlando instead. Despite orders to return inside, appellant remained outside.
 {¶ 4} Officer Fields informed Orlando that he was taking him to segregation. Orlando explained that he was not going and demanded to see a superior officer. Officer Fields held Orlando up against a wall in an attempt to secure him and take him to segregation. Orlando responded that he was not going and refused to cooperate. Eventually, Orlando pushed Officer Fields and, then, punched him several times. During this incident, Officer Fields used his radio to call other corrections officers for assistance. Finally, Officer Fields fell to the ground, where he was repeatedly kicked by Orlando.
 {¶ 5} Shortly after Orlando attacked Officer Fields, appellant punched Officer Goodiel in the face. Thereafter, he joined Orlando in kicking Officer Fields while he was on the ground. Appellant's final kick to Officer Fields was described as extremely hard and directly to the officer's face.
 {¶ 6} Several other corrections officers arrived at the scene of the attack in response to Officer Fields' radio call. As he was responding, Corrections Officer Terry Wurgler noticed appellant kick Officer Fields three times in the torso. Then, he watched appellant take a step back, look at him, and kick Officer Fields in the head. He also noticed another officer standing against the wall with their hands to their face. Upon arriving at the scene, he briefly looked down at Officer Fields and, then, was punched in the face by appellant.
 {¶ 7} Corrections Officer Mauro also responded to the incident. He attempted to restrain appellant, but appellant punched him in the face. The two went to the ground, but appellant quickly got to his feet and assumed a "fighting stance."
 {¶ 8} Thereafter, other officers were able to restrain appellant and Orlando.
 {¶ 9} Appellant was indicted on three counts of felonious assault, in violation of R.C. 2903.11, felonies of the second degree (one count each for Officers Goodiel, Fields, and Mauro); four counts of assault, in violation of R.C. 2901.13, felonies of the fifth degree (one count per officer for the attacks on Officers Goodiel, Fields, Wurgler, and Mauro); and one count of attempted murder, in violation of R.C. 2923.02 and 2903.02, a first-degree felony (for the conduct against Officer Fields).
 {¶ 10} Appellant pled not guilty to the charges against him. A jury trial was initially scheduled for July 30, 2002. On April 30, 2002, appellant filed a request for final disposition of the matter, pursuant to R.C. 2941.401.
 {¶ 11} On July 24, 2002, appellant filed a motion to continue the jury trial set for July 30, 2002, because counsel would be out of town those days. The motion was granted, and the jury trial was reset for October 29, 2002. On October 4, 2002, the state filed a motion to continue the jury trial set for October 29, 2002, because the assistant prosecutor assigned to the case would be out of town on that date. The state's motion to continue was granted, and the jury trial was rescheduled for November 13, 2002. On November 1, 2002, appellant filed a motion to continue, due to the fact that the codefendant's trial had been continued and he had an interest in keeping the trials scheduled together. In this motion to continue, appellant waived all speedy-trial requirements to accommodate the motion. This motion was granted, and the jury trial was rescheduled for February 4, 2003.
 {¶ 12} On May 31, 2002, appellant filed a motion to dismiss the attempted murder count of the indictment. The trial court set the motion to be heard on July 24, 2002. However, the motion was not decided at that time, and it was not ruled on until the morning of the first day of trial in February 2003. The trial court denied appellant's motion to dismiss this count of the indictment.
 {¶ 13} Appellant's jury trial commenced on February 4, 2003. After the jury was seated, appellant moved the court to dismiss his trial counsel. The trial court permitted appellant to argue why the dismissal should be permitted. Thereafter, the trial court denied appellant's motion to dismiss his trial counsel.
 {¶ 14} The February 4, 2003 trial also concerned the charges against Orlando for this incident. However, after the jury was seated, Orlando entered a no contest plea to the charges against him. The remainder of the jury trial only concerned the charges against appellant.
 {¶ 15} The state presented the victims of the attacks, who testified to the events of the day and their injuries. After the state rested, appellant moved for acquittal pursuant to Crim.R. 29. The trial court denied appellant's motion for acquittal. The defense did not present any evidence. The jury found appellant guilty on all of the counts in the indictment.
 {¶ 16} The trial court merged the convictions for the offenses relating to each of the victims. Appellant was sentenced to eight years for the attempted murder conviction, six years for the felonious assault conviction relating to Officer Goodiel, two years for the felonious assault conviction relating to Officer Mauro, and nine months for the assault conviction relating to Officer Wurgler. These sentences were ordered to be served consecutively to each other. Thus, appellant's aggregate prison term was sixteen years and nine months. This sentence was ordered to be served consecutively to the prison term appellant was already serving.
 {¶ 17} Appellant raises three assignments of error on appeal. His first assignment of error is:
 {¶ 18} "The appellant's convictions are against the manifest weight of the evidence."
 {¶ 19} Appellant frames his argument as the convictions being against the manifest weight of the evidence. However, in his brief, he argues that the state did not meet its burden of establishing all of the elements of the counts beyond a reasonable doubt. Such argument is more consistent with a sufficiency of the evidence challenge. When determining whether there is sufficient evidence presented to sustain a conviction, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."[1]
 {¶ 20} In State v. Thompkins, the Supreme Court of Ohio held that sufficiency of the evidence and manifest weight of the evidence are not synonymous legal concepts.[2]
Specifically, the court held "[t]he legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different."[3] After reviewing the record, appellant's argument would fail on both a sufficiency of the evidence and a manifest weight of the evidence standard. However, since appellant has only assigned error regarding the manifest weight of the evidence, we will only conduct an analysis relating to that topic.
 {¶ 21} In determining whether a verdict is against the manifest weight of the evidence, the Supreme Court of Ohio has adopted the following language as a guide:
 {¶ 22} "`The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'"[4]
 {¶ 23} Appellant asserts that he did not have the requisite mental state to be convicted of attempted murder. The Supreme Court of Ohio has held that "a person is guilty of attempted murder when he or she `purposely * * * engage(s) in conduct that, if successful, would constitute or result in' the purposeful killing of another."[5]
 {¶ 24} In this case, several witnesses testified that appellant was kicking Officer Fields in the torso and the head. In particular, two witnesses described the final kick to Officer Fields' head. Appellant lined himself up like a "field goal kicker." Then, appellant kicked Officer Fields head extremely hard and even followed through.
 {¶ 25} Dr. Thomas Hunt testified as to Officer Fields' injuries. He testified that Officer Fields had a broken nose and the bones around his eyes were fractured. Dr. Hunt testified that a severely broken nose, such as Officer Fields' nose, could cause death if the small bones behind the nose are driven into the brain.
 {¶ 26} Further, we note the Tenth Appellate District has held that repeated, forceful kicking to another's head is sufficient to support an attempted murder conviction.[6] In this matter, we conclude the attempted murder conviction was not against the manifest weight of the evidence.
 {¶ 27} Next, appellant argues that there was no evidence linking Officer Fields' injuries to his actions. He claims the injuries could have been caused by Orlando's actions. The evidence from trial demonstrates that both appellant and Orlando inflicted serious punches and/or kicks to Officer Fields. As the state notes, an individual may be liable for an injury to a victim even when there is another culpable party.[7] When an individual participates as part of a group in an attack on a victim, it may be difficult for medical experts to conclusively determine who is responsible for each specific injury.[8]
In this matter, there was direct evidence that appellant kicked Officer Fields several times, including the graphic kick to his head. For purposes of felonious assault, this evidence justifies his conviction. Likewise, for purposes of attempted murder, this evidence is sufficient. This is because the defendant need not actually cause physical harm to the victim to be convicted of attempted murder.[9]
 {¶ 28} In regard to the felonious assault conviction relating to the attack on Officer Goodiel, appellant claims that there was not "enough" harm caused to the victim to warrant a conviction for felonious assault. We disagree. Initially, we disagree with appellant's assertion that "one hit" cannot justify a felonious assault conviction. A punch to the face, resulting in serious injuries to the victim, can support a conviction for felonious assault.[10] Appellant struck a woman in the face with enough force to crack two of her teeth. Further, Officer Goodiel testified that she has lost a total of six teeth due to complications from nerve damage she suffered from the hit.
 {¶ 29} Appellant claims his convictions relating to the strikes to Officers Mauro and Wurgler are against the manifest weight of the evidence because he acted in self-defense. While it is true that the officers were approaching appellant to restrain him, such conduct did not justify appellant's use of force against them.
 {¶ 30} "`To establish self-defense, a defendant must prove * * * (1) that the defendant was not at fault in creating the situation giving rise to the affray; (2) that the defendant had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force; and (3) that the defendant did not violate any duty to retreat or avoid the danger.'"[11]
 {¶ 31} In this matter, appellant, by punching Officer Goodiel and kicking Officer Fields, caused the affray. If not for his actions, Officers Mauro and Wurgler would not have approached him in an effort to restrain him. Moreover, we note that the standard for establishing self-defense against an officer is elevated.[12] "`In the absence of excessive or unnecessary force by (a police) officer, a private citizen may not use force to resist the arrest by one he knows, or has good reason to believe, is an authorized police officer engaged in the performance of his duties, whether or not the arrest is illegal under the circumstances.'"[13] Corrections Officers Mauro and Wurgler were performing their duties at the prison in attempting to restrain appellant. Thus, appellant was not permitted to use force against them.
 {¶ 32} The jury did not lose its way or create a manifest miscarriage of justice by returning guilty verdicts on all of the counts of the indictment.
 {¶ 33} Appellant's first assignment of error is without merit.
 {¶ 34} Appellant's second assignment of error is:
 {¶ 35} "The trial court erred in denying appellant's motion to dismiss based on speedy trial violations."
 {¶ 36} On April 30, 2002, appellant filed a request for final disposition, pursuant to R.C. 2941.401, which provides, in part:
 {¶ 37} "When a person has entered upon a term of imprisonment in a correctional institution of this state, and when during the continuance of the term of imprisonment there is pending in this state any untried indictment, information, or complaint against the prisoner, he shall be brought to trial within one hundred eighty days after he causes to be delivered to the prosecuting attorney and the appropriate court in which the matter is pending, written notice of the place of his imprisonment and a request for a final disposition to be made of the matter, except that for good cause shown in open court, with the prisoner or his counsel present, the court may grant any necessary or reasonable continuance."
 {¶ 38} The purpose of R.C. 2941.401 is to prevent the state from stalling the prosecution of the new charges until the defendant is released from the current prison term.[14]
 {¶ 39} In interpreting R.C. 2941.401, the Supreme Court of Ohio has held that "the duty to bring such a defendant to trial within 180 days of the written notice and request arises only after receipt of that statutory notice."[15] Since appellant's motion was filed on April 30, 2002, the one hundred eighty-day limit expired on October 27, 2002. This is because the time calculation begins on the day following delivery to the court and the prosecuting attorney, in this case, May 1, 2002.[16]
 {¶ 40} Appellant's jury trial did not begin until February 4, 2003. On its face, this appears to be a speedy-trial violation. However, for the following reasons, we conclude appellant's speedy-trial rights were not violated.
 {¶ 41} On two occasions, appellant filed motions to continue his jury trial. The Supreme Court of Ohio has held:
 {¶ 42} "`A defendant's right to be brought to trial within the time limits expressed in R.C. 2945.71 may be waived by his counsel for reasons of trial preparation and the defendant is bound by the waiver even though the waiver is executed without his consent.'"[17]
 {¶ 43} Appellate courts have held that the Supreme Court of Ohio's ruling in State v. MeBreen also applies to R.C.2941.401.[18] We agree with this conclusion. The right given to a prisoner to request a final disposition and have his case tried within one hundred eighty days is a statutory right. Thus, it could be waived by counsel without appellant's consent for purposes of trial preparation.[19] In Orlando's appeal, this court explained the exception to the open court requirement:
 {¶ 44} "Although the language of R.C. 2941.401 seems to require a continuance to be granted in open court with the prisoner or his counsel present, courts, including this court, consistently have tolled the speedy trial period for those reasons contained in R.C. 2945.72, when made by the defendant'sown motion even if the request was not sought or granted in open court with the presence of the defendant or his or her counsel."[20]
 {¶ 45} Appellant filed two motions to continue in this matter. Neither of the motions was made in open court. Further, in light of appellant's third assignment of error, we will presume that neither of these motions was made with appellant's consent.
 {¶ 46} Appellant's first motion to continue, filed July 24, 2002, was requested because "counsel will be out of town on the days during the trial period and has had numerous other court hearings scheduled since the last rescheduling of this jury trial." This reasoning does not qualify as "for the purposes of trial preparation." Therefore, this continuance did not toll the speedy-trial clock.
 {¶ 47} Appellant's second continuance request, filed November 1, 2002, was due to the codefendant's trial being continued. Counsel argued that it appeared in the interest of justice to keep them together. We consider this to be a trial strategy decision and within the acceptable purposes of trial preparation. Thus, this continuance tolled the speedy-trial clock. Further, in this continuance request, appellant waived "speedy trial time limit requirements." Therefore, the time from November 1, 2002 until February 4, 2003, was tolled and charged against the defendant.
 {¶ 48} A defendant's motion to continue will toll the speedy-trial clock under R.C. 2941.401 even if it is made without the defendant's consent, provided it is for the purposes of trial preparation.[21] In this limited circumstance, the continuance does not need to be granted in open court. However, in all other circumstances, a continuance must be granted in open court with the defendant or his attorney present. In State v.Miller, this court reversed a conviction for a speedy-trial violation relating to R.C. 2941.401, because the trial court continued the matter without conducting a hearing in open court.[22] It is important to note that the trial court in that case continued the matter sua sponte.[23]
 {¶ 49} On October 7, 2002, the state filed a motion to continue the jury trial set for October 29, 2002, because the assistant prosecutor was going to be on vacation during that time. This continuance was not granted in open court with appellant or his counsel present, as required by R.C. 2941.401. Therefore, this time period is not tolled for speedy-trial purposes.[24]
 {¶ 50} This court has held that the tolling provisions of R.C. 2945.72 apply to one hundred eighty-day limit of R.C.2941.401.[25] The Second Appellate District has also adopted this rule.[26]
 {¶ 51} R.C. 2945.72 provides, in part:
 {¶ 52} "The time within which an accused must be brought to trial, or, in the case of felony, to preliminary hearing and trial, may be extended only by the following:
 {¶ 53} "* * *
 {¶ 54} "(E) Any period of delay necessitated by reason of a plea in bar or abatement, motion, proceeding, or action made or instituted by the accused."
 {¶ 55} On May 31, 2002, appellant filed a motion to dismiss the attempted murder count of the indictment. This court has held that "[a] motion to dismiss tolls the time in which a defendant must be brought to trial from the day it is filed."[27] The entire time between a motion being filed and the date the trial court ultimately rules on the motion will not automatically be charged against the defendant; rather, the time must be "reasonable."[28] While there are no specific factors to apply to determine if a length of time is reasonable, this court has previously considered "the nature of the motion itself, whether other motions were pending during the same period, and the presence of any extenuating circumstances which made ruling upon the motion extremely difficult."[29]
 {¶ 56} This motion was originally set to be argued before the court on July 24, 2002. However, the trial was continued, and the trial court did not rule on appellant's motion to dismiss until February 4, 2003, the first day of trial. It took the trial court more than eight months to ultimately rule on appellant's motion to dismiss. When it addressed the motion on the first day of appellant's jury trial, the trial court indicated that the matter had been delayed, because the July 24, 2002 pretrial conference did not occur and there were not any other pretrial conferences set. We consider the eight-month delay an unreasonable amount of time, and we decline to charge all of this time against appellant. It is reasonable, however, to charge some time against appellant. In this case, we believe July 24, 2002, the date the motion was originally set to be heard, is an appropriate date to use. July 24, 2002 was less than two months after the motion was filed, the state had filed its response to the motion by that date, and the date is reasonable in light of the serious nature of the charge sought to be dismissed. Therefore, the time from May 31, 2002 through July 24, 2002, will be charged against appellant.
 {¶ 57} Generally, motions for continuance filed by the state, if reasonable, or the defense will toll the speedy-trial clock under 2945.72.[30] However, as noted above, R.C. 2941.401
only permits continuances if they are granted in open court in the presence of the defendant or his counsel. The only exception to this rule is a motion for continuance filed by the defendant's counsel for the purposes of trial preparation.[31] The provisions in R.C. 2945.72 do not prevail over those in R.C.2941.401, since R.C. 2941.401 is a more specific statute.[32] Therefore, in this matter, the state's motion to continue and appellant's July motion to continue do not toll the speedy-trial clock, since they were not granted in open court.
 {¶ 58} In conclusion, appellant was brought to trial two hundred eighty days after he filed his request for final disposition. Ninety-six days were tolled as a result of appellant's November 1, 2002 motion to continue, wherein he waived his speedy-trial rights. Further, fifty-four days were tolled as a result of the motion to dismiss the attempted murder count of the indictment. Thus, appellant was brought to trial within one hundred thirty "chargeable" days. Accordingly, his speedy-trial rights were not violated.
 {¶ 59} Appellant's second assignment of error is without merit.
 {¶ 60} Appellant's third assignment of error is:
 {¶ 61} "The trial court erred in going forward with the trial and not appointing new counsel."
 {¶ 62} A trial court's decision on a defendant's motion for substitute counsel will not be reversed absent an abuse of discretion.[33] "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable."[34]
 {¶ 63} While there is a right to competent counsel at the state's expense, we note that an indigent defendant does not have the right to have a particular attorney represent him and, thus, the defendant must show "good cause" for the trial court to replace his current counsel.[35] "In evaluating a request for substitute counsel, the court must balance `the accused's right to counsel of his choice (against) the public's interest in the prompt and efficient administration of justice.'"[36]
Finally, we note that a request to dismiss a court-appointed attorney is only required where there is a "breakdown in the attorney-client relationship of such magnitude as to jeopardize the defendant's right to effective assistance of counsel."[37]
 {¶ 64} Shortly after the colloquy regarding appellant's motion to dismiss his trial counsel, Orlando's counsel informed the court Orlando wished to enter a no contest plea. In response, appellant also told the court he wished to enter a no contest plea. The trial court took a recess to allow appellant to discuss a possible change of plea with his trial counsel. Following the recess, trial counsel informed the court that appellant no longer wished to enter a no contest plea. This incident demonstrates that appellant and his trial counsel were able to have meaningful interaction and that there was not a total breakdown of the attorney-client relationship.
 {¶ 65} Appellant moved the court for new counsel during the trial. The jury had been seated. The state made its opening statement. As such, appellant's motion was untimely.[38]
Also, appellant's motion was, in effect, a motion to continue, as a new attorney would have needed time to prepare for trial.
 {¶ 66} The Supreme Court of Ohio has held that "[t]he grant or denial of a continuance is a matter which is entrusted to the broad, sound discretion of the trial judge. An appellate court must not reverse the denial of a continuance unless there has been an abuse of discretion."[39] In determining whether a trial court abused its discretion when ruling on a motion for continuance, a reviewing court must weigh any potential prejudice to the defendant against the trial court's "right to control its own docket and the public's interest in the prompt and efficient dispatch of justice."[40]
 {¶ 67} As discussed in our analysis of appellant's second assignment of error, this matter took several months to get to trial. Appointing new counsel for appellant would have resulted in delaying the trial a significant amount of time in order for new counsel to become familiar with the case.
 {¶ 68} The trial court did not abuse its discretion by denying appellant's motion to dismiss his trial counsel.
 {¶ 69} Appellant's third assignment of error is without merit.
 {¶ 70} The judgment of the trial court is affirmed.
Diane V. Grendell, J., Cynthia Westcott Rice, J., concur in judgment only.
[1] State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, following Jackson v. Virginia (1979),443 U.S. 307.
[2] State v. Thompkins (1997), 78 Ohio St.3d 380, 386.
[3] Id.
[4] (Citations omitted.) State v. Thompkins,78 Ohio St.3d at 387.
[5] State v. Barnes (2002), 94 Ohio St.3d 21, 26, citing R.C.2923.02(A).
[6] See State v. Husband, 10th Dist. No. 02AP-1097, 2003-Ohio-2279, at ¶ 47.
[7] State v. Keene (1998), 81 Ohio St.3d 646, 655.
[8] State v. Husband, at ¶ 44.
[9] See State v. Bryan, 101 Ohio St.3d 272, 2004-Ohio-971, at ¶ 121.
[10] See, e.g., State v. Bennett, 7th Dist. No. 04-MA-184,2006-Ohio-3566, at ¶ 46, 64, and State v. Gary, 11th Dist. No. 2003-T-0124, 2004-Ohio-6686, at ¶ 3, 10, 24-25.
[11] State v. Cassano, 96 Ohio St.3d 94, 2002-Ohio-3751, at ¶72, quoting State v. Barnes, 94 Ohio St.3d at 24, citing Statev. Robbins (1979), 58 Ohio St.2d 74, paragraph two of the syllabus.
[12] State v. Grace (Oct. 11, 1995), 9th Dist. No. 16950, 1995 Ohio App. LEXIS 4545, at *15.
[13] Id. at *15-16, quoting Columbus v. Fraley (1975),41 Ohio St.2d 173, paragraph three of the syllabus.
[14] State v. Hairston, 101 Ohio St.3d 308, 2004-Ohio-969, at ¶ 25.
[15] Id. at ¶ 26.
[16] See State v. Shepherd, 11th Dist. No. 2003-A-0031,2004-Ohio-5306, at ¶ 15, fn. 1, citing State v. Cloud (1997),122 Ohio App.3d 626, 629.
[17] State v. Logan (1991), 71 Ohio App.3d 292, 297, quotingState v. McBreen (1978), 54 Ohio St.2d 315, syllabus.
[18] State v. Logan, 71 Ohio App.3d at 297-298, citing Statev. Rodano (Apr. 14, 1988), 8th Dist. No. 53804, 1988 WL 37955.
[19] State v. King (1994), 70 Ohio St.3d 158, 160, citingState v. McBreen, 54 Ohio St.2d 315, syllabus.
[20] (Emphasis in original.) State v. Shepherd,2004-Ohio-5306, at ¶ 14, citing State v. Pesci, 11th Dist. No. 2001-L-026, 2002-Ohio-7131, at ¶ 40; State v. Curry (Sept. 30, 1997), 4th Dist. No. 95CA2339, 1997 Ohio App. LEXIS 4495, at *11-12; State v. Judd (Sept. 19, 1996), 10th Dist. No. 96APA03-330, 1996 Ohio App. LEXIS 4109, at *11-12; State v.Doane (July 9, 1992), 8th Dist. No. 60097, 1992 Ohio App. LEXIS 3579, at *8; and State v. Logan, 71 Ohio App.3d at 297-298.
[21] State v. Logan, 71 Ohio App.3d at 297-298, citing Statev. Rodano, 1988 WL 37955.
[22] State v. Miller (1996), 113 Ohio App.3d 606, 610.
[23] Id.
[24] State v. Shepherd, 2004-Ohio-5306, at ¶ 17, fn. 2, citing State v. Miller, 113 Ohio App.3d at 610.
[25] State v. Pesci, 2002-Ohio-7131, at ¶ 33, citing Statev. Nero (Apr. 4, 1990), 4th Dist. No. 1392, 1990 Ohio App. LEXIS 1383, at *5, fn. 1. See, also, State v. Shepherd,2004-Ohio-5306, at ¶ 13.
[26] State v. Ray, 2d Dist. No. 2004-CA-64, 2005-Ohio-2771, at ¶ 30.
[27] State v. Blumensaadt (Sept. 20, 2001), 11th Dist. No. 2000-L-107, 2001 Ohio App. LEXIS 4283, at *19, citing State v.Ritter (Dec. 17, 1999), 11th Dist. No. 98-A-0065, 1999 Ohio App. LEXIS 6100.
[28] (Citations omitted.) State v. Ritter, supra, at *10.
[29] Id. at *10-11.
[30] R.C. 2945.72(H).
[31] See, e.g., State v. Shepherd and State v. Logan,
supra.
[32] See State v. Chippendale (1990), 52 Ohio St.3d 118,120.
[33] State v. Murphy (2001), 91 Ohio St.3d 516, 523, citingState v. Cowans (1999), 87 Ohio St.3d 68, 73.
[34] State v. Adams (1980), 62 Ohio St.2d 151, 157.
[35] (Citations omitted.) State v. Murphy,91 Ohio St.3d at 523.
[36] Id., quoting United States v. Jennings (C.A.6, 1996),83 F.3d 145, 148.
[37] State v. Coleman (1988), 37 Ohio St.3d 286, paragraph four of the syllabus.
[38] See State v. Cassano, 96 Ohio St.3d 94, 2002-Ohio-3751, at ¶ 40.
[39] State v. Unger (1981), 67 Ohio St.2d 65, 67.
[40] State v. Unger, 67 Ohio St.2d at 67.