OPINION
{¶ 1} Appellant, William E. Coleman, Jr., appeals his conviction following a jury verdict finding him guilty of felonious assault, assault, and escape by the Ashtabula County Court of Common Pleas. For the reasons that follow, we affirm in part and reverse in part. *Page 2 
 {¶ 2} Upon graduation from Kent State University, Sara Sprague was employed by the Ashtabula County Sheriffs Office as a corrections officer in the county jail. Her duties included booking inmates and maintaining security in the jail. The jail has five floors. The booking office is on the first floor. The inmate cells are located on each of the remaining four floors. On each of those floors, there is a central common area called "the day area" with ten inmate cells located along the perimeter of the day area. Each of the cells opens into the day area.
 {¶ 3} The routine at the jail is that every day from about 5:00 a.m. to 11:30 p.m., the inmates are allowed to be out of their cells and to remain in the day area where, for example, they drink coffee, eat their meals, play cards, or watch television. The inmates are locked in their cells at night from 11:30 p.m. until 5:00 a.m.
 {¶ 4} Each floor of the jail with inmate cells has a centralized lock box from which the cells on that floor are opened and locked electronically. There is a button for each cell. The cells are opened from the lock box by pushing the button for that cell. Every corrections officer is assigned to a different floor each day. During the unlocking process, which begins at approximately 5:00 a.m., a second corrections officer, who would be assigned to another floor, assists the officer in the unlocking process. One officer opens the cells from the lock box, while the second officer manually opens each cell door and gives each inmate his medications and toiletries.
 {¶ 5} The lock box is located in the sally port area, which is a hallway between the day area and the office area. There is a door leading into the office from the sally *Page 3 
port area. Each of the floors is connected by a stairway and elevator which open to the office area on each floor.
 {¶ 6} On April 1, 2006, Off. Sprague was assigned to the fourth floor. At about 5:30 a.m., she began to open the cells on that floor from the lock box. The corrections officer assisting her at that time was William Glosser, a fifteen-year veteran of the Sheriffs Office. While Off. Glosser was manually opening the cell doors, Off. Sprague was standing by the lock box. The first cell Off. Glosser opened was that of appellant. After Off. Glosser opened his cell door, appellant walked out of his cell and went directly toward the hot water spigot, which is attached to the wall near the sally port area. The inmates use this hot water for their coffee or soup. Off. Sprague was standing approximately two feet from the spigot while appellant was using it.
 {¶ 7} While appellant was rinsing his cup by the spigot, Off. Sprague noticed he was watching her. He filled a cup full of hot water, then threw it at Off. Sprague. Appellant then came toward her, and she said, "Back up, Coleman." He then punched her in her face. She was immediately rendered unconscious and fell to the floor.
 {¶ 8} Off. Glosser testified he was opening the cells when he heard Off. Sprague screaming. As soon as he heard her, he ran to the sally port area where she had been working. He saw appellant kick Off. Sprague in her left side and lean down and punch her in her face. Off. Glosser yelled appellant's name and ran toward him. Glosser grabbed appellant's uniform, thereby pulling him away from her.
 {¶ 9} Appellant pulled away from Off. Glosser, and ran through the outer door into the office area. Off. Glosser pursued him, leaving Off. Sprague on the floor. *Page 4 
Appellant headed toward the west side, where the stairway leading to the first floor is located.
 {¶ 10} Off. Glosser ran after appellant in the office area to keep him from going down the stairs. He grabbed appellant, and he fought with the officer to free himself. He struck the officer with his fists in his chest, neck and face.
 {¶ 11} Meanwhile, Corrections Officers Brian Dale and James Stevens were assigned to the second floor when they heard Off. Glosser yelling at appellant. They immediately ran up to the fourth floor and found appellant and Off. Glosser fighting in the office area. They assisted Off. Glosser by taking control of appellant and handcuffing him.
 {¶ 12} Deputy Robert Ginn of the Sheriffs Office was assigned to take a statement from appellant. After giving him his Miranda rights, Deputy Ginn asked appellant for a statement concerning the incident. Appellant said, "Yes, I fucking did it. She was up there letting Nigers [sic] run trains on her and [ ] other reasons she knows why." This was a derogatory reference to some sexual practice allegedly engaged in between Sara and the inmates.
 {¶ 13} Off. Sprague woke up moments later and found herself in a pool of her own blood. She was bleeding profusely from her nose and face, and she felt pain in her head. Other inmates in the day area helped her get up. Off. Glossser then returned to the sally port area, and assisted Off. Sprague in leaving the area to obtain medical assistance. They left the day area through the exit doors leading to the office area, and went down the elevator while appellant was being restrained by Offs. Dale and Stevens. *Page 5 
 {¶ 14} Off. Sprague was taken to the Ashtabula County Medical Center by ambulance. She testified hospital staff applied stitches to a laceration on her nose. She was advised she had a broken nose and a broken tooth and to follow-up with surgical treatment. Following her release from the hospital, Off. Sprague treated with a plastic surgeon Janet Blanchard, M.D.
 {¶ 15} Dr. Blanchard testified that Off. Sprague had sustained a nasal fracture, which caused her nose to be deviated to the right and depressed on the left. This injury obstructed her nasal cavity on the left side. She had a laceration to her nose and bruising around her eyes and face. The doctor performed closed reduction surgery on April 10, 2006. Dr. Blanchard stated that as a result of this procedure, the nose would be swollen for about one year, and breathing would be diminished for three to four months.
 {¶ 16} Dr. Blanchard examined Off. Sprague on April 14, 2006. She saw that the officer's nose would not stay in place because the bones were so fragmented. She inserted plug-type packing in the nose and applied a splint to the outside of her nose. Upon examination on May 18, 2006, Dr. Blanchard observed that Off. Sprague's nose was still depressed and crooked. The doctor said the bones in her nose were so fragmented that if she attempted a second procedure now, the nose would become even more fragmented and would not stay in place. She said that in order to make Sara's nose straight again, she would have to perform another surgery in about one year. This would require her to break the nose again, and to perform a septoplasty. Further, the scar from the laceration on her nose became hypertrophic, meaning that it *Page 6 
became raised and discolored. Off. Sprague had also sustained a broken blood vessel in her nose for which the doctor performed surgery. Dr. Blanchard testified that she would never be able to correct the scar on Sara's nose.
 {¶ 17} Off. Sprague also treated with psychologist Loren Shapiro, Ph.D., for over four months for post-traumatic stress disorder, which, he concluded, was a direct result of the "life threatening assault perpetrated upon her at work." He said she suffered from recurrent and intrusive recall of the April 1, 2006 attack; recurrent disturbing nightmares of the assault and resulting fitful sleep; significant despondency; outbursts of anger; lost sense of control; extreme anxiety; episodes of unprovoked panic; and intense fear.
 {¶ 18} Off. Sprague treated with dentist James E. Macy, D.D.S. for a fractured maxillary right central incisor.
 {¶ 19} Sara was also treated by chiropractor Dr. Norman Gloekler from April 2006 until August 2006 for "unbearably" painful headaches, severe neck pain radiating across both shoulders, shooting pain in the right shoulder radiating down the right arm, right arm and hand numbness and tingling, constant abdominal pain, left lower rib pain, and lower back pain.
 {¶ 20} Corporal Frank Sundquist of the Ashtabula County Sheriffs Office, who is the supervisor of the jail, testified the inmates know they are not permitted to advance out of the day area into the office area unless they are being escorted in or out of the jail by a corrections officer.
 {¶ 21} Appellant was indicted and charged with two counts of felonious assault upon Offs. Sprague and Glosser, felonies of the second degree, in violation of R.C. *Page 7 2903.11; one count of assault upon Off. Glosser, a felony of the fifth degree, in violation of R.C. 2913.11; and one count of escape while being incarcerated on a second-degree robbery charge, a felony of the second degree, in violation of RC. 2921.34. The case was submitted to the jury on all counts, except the felonious assault count upon Off. Glosser. The jury returned a guilty verdict on all counts. The court imposed a sentence of eight years on the remaining felonious assault charge, twelve months on the assault charge, and twelve months on the escape charge, each sentence to be served consecutively to the other for a total sentence of ten years.
 {¶ 22} Appellant appeals the judgment of the trial court, asserting five assignments of error. For his first assignment of error, appellant states:
 {¶ 23} "The trial court erred to the prejudice of appellant because there was insufficient evidence to convict Mr. Coleman under R.C. Sec. 2903.11."
 {¶ 24} Under this assignment of error, appellant does not dispute that the injuries Off. Sprague sustained i.e., broken nose, broken tooth, knot on her head, permanent scar to the face, neck and back injuries, were sufficient to support a conviction for felonious assault. Rather, he argues his conviction is not supported by sufficient evidence to prove he "knowingly" inflicted serious physical harm on her. He argues that because he only punched Sara in her face once, he could not have known he would cause her to sustain the serious injuries he inflicted.
 {¶ 25} "`"Sufficiency" is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law.'" State v. Thompkins, *Page 8 78 Ohio St.3d 380, 386, 1997-Ohio-52, quoting Black's Law Dictionary (6 Ed. 1990) 1433. A challenge to the sufficiency of the evidence supporting a conviction requires a court to determine whether the state has met its burden of production at trial. Id. at 390. On review for sufficiency, courts are to assess not whether the state's evidence is to be believed, but whether, if believed, the evidence would support a conviction. Id. The heart of a sufficiency allegation is that the prosecution failed to present evidence on each element of its claim. State v. Schlee (Dec. 23, 1994), 11th Dist. No. 93-L-082, 1994 Ohio App. LEXIS 5862, *14. A reviewing court must interpret the evidence in a light most favorable to the prosecution. Id. The proper question to ask is whether the evidence presented, "`* * * if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.'" State v. Ramirez (1994),98 Ohio App.3d 388, 393; quoting, State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the state, any rational trier of fact could have found the elements of the crime proven beyond a reasonable doubt. Id. Applying this standard to the evidence presented in this case, we believe the evidence was sufficient to establish that appellant knowingly caused serious physical harm to Off. Sprague.
 {¶ 26} Appellant was convicted of felonious assault upon Off. Sprague in violation of R.C. 2903.11. That section provides in pertinent part: "No person shall knowingly * * * cause serious physical harm to another * * *."
 {¶ 27} "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain *Page 9 
nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).
 {¶ 28} "Serious physical harm" is defined at R.C. 2901.01 (A)(5) as follows:
 {¶ 29} "* * *
 {¶ 30} "(d) Any physical harm that involves some permanent disfigurement, or that involves some temporary, serious disfigurement;
 {¶ 31} "(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering, or that involves any degree of prolonged or intractable pain."
 {¶ 32} We do not agree with appellant's argument that one punch is insufficient to support a conviction for felonious assault. In State v.Shepherd, 11th Dist. No. 2003-A-0028, 2006-Ohio-4315, the defendant argued that one punch could not justify a felonious assault conviction. This court held that one punch to the face, resulting in serious injuries to the victim, can support a conviction for felonious assault. In that case the defendant, a jail inmate, struck a female corrections officer with enough force to crack two of her teeth. This court held the evidence was sufficient to support a conviction for felonious assault.
 {¶ 33} However, the record here demonstrates that in addition to punching Off. Sprague in the face with a blow that was of sufficient force to render her unconscious, appellant also kicked her while she laid unconscious on the floor and then punched her again in the face. *Page 10 
 {¶ 34} It is well-settled that a culpable mental state can be established by inference. In State v. Ayers (Aug. 18, 1981), 3d Dist. No. 9-81-1, 1981 WL 6671, the defendant hit the victim twice with his fist with sufficient force to break his cheekbone. The defendant argued there was nothing to establish these two blows would probably cause serious physical harm. The court held: "[T]he evidence clearly shows the blows were directed to the victim's face and head. This is the site of the sense of smell, of taste, of sight, and of hearing. It is the situs of the brain. As such, any violent blow can be expected to probably cause, and it may be inferred is intended to cause, some temporary substantial incapacity and to cause acute pain of such duration as to result in substantial suffering. * * *" Id. at *2.
 {¶ 35} Further, in State v. Carlton (Nov. 22, 1995), 2d Dist. No. 14930, 1995 WL 695024, the female victim testified the defendant said, "I'll kill you, you fuckin' bitch," just before he punched her in the eye. The blow broke bones in her cheek and at the time of trial she still had no feeling on the right side of her mouth. The court held that the severity of the injury supported the element of serious physical harm as well as the inference that the defendant struck her with such force that he knew that serious physical harm was likely to result. Id. at *6. The court held: "In our view, the evidence of Wilson's injuries is sufficient to warrant an inference that Wilson was struck with such force that her assailant was aware that the blow would probably cause serious physical harm." Id.
 {¶ 36} As a result of this attack, Sara sustained a comminuted fracture of the nasal bone and a laceration on the nose for which she required several stitches. She *Page 11 
underwent reconstructive surgery on her nose and a second surgery for a broken blood vessel. Following her reconstructive surgery, it was determined that the surgery did not correct the deviation and depression of the nose. As a result, Dr. Blanchard testified that Sara's nose will have to be broken again, and she will require another surgery to attempt to correct the damage to her nose. Further, Dr. Blanchard testified that she will never be able to correct the scar on her nose. In addition, Off. Sprague sustained a knot on her head, a fracture to one of her front teeth, and severe neck, shoulder, and lower back injuries for which she obtained treatment.
 {¶ 37} Appellant in his statement to Deputy Ginn made it clear he bore personal animosity toward Off. Sprague. His statement along with the serious injuries he inflicted on Sara by punching her twice and kicking her support the inference that he was aware his actions would cause serious injury. We hold that the evidence was sufficient to support the jury's finding that appellant knowingly caused Sara to sustain serious physical harm.
 {¶ 38} Under this assignment of error, appellant also argues the state failed to meet its burden of proof concerning whether Off. Sprague had sustained permanent or temporary serious disfigurement because, he argues, the state failed to obtain a ruling from the trial court that Dr. Blanchard was qualified to testify as an expert before she testified concerning Sara's injuries. Appellant does not dispute that Dr. Blanchard testified concerning the permanence and serious nature of Sara's disfigurement. Instead, he argues this testimony was inadmissible because the trial court did not make this advance ruling. We do not agree. *Page 12 
 {¶ 39} It must first be noted that appellant failed to make any such objection below. In fact, appellant stated he had no cross-examination for the doctor and no objection to the admission of her medical chart or her curriculum vitae. It is well-settled that appellate courts "do not consider questions not presented to the court whose judgment is sought to be reversed." State ex rel. Porter v. Cleveland Dept. of PublicSafety (1998), 84 Ohio St.3d 258, 259. This court has held that a party's failure to raise an issue at the trial court level acts as a waiver of the issue on appeal. Sekora v. General Motors Corp. (1989),61 Ohio App.3d 105, 112-113. An appellate court may decline to consider errors which could have been brought to the trial court's attention and hence avoided or corrected. Schade. v. Carnegie Body Co. (1982),70 Ohio St.2d 207, 210. As a result, appellant waived any error in this regard on appeal.
 {¶ 40} Further, appellant has failed to cite any authority in support of his argument that the trial court must first rule that a witness is qualified as an expert before he or she can testify in that capacity. Additionally, appellant never asked for any such ruling and thus waived this argument. We note that as a matter of practice, if the adverse party takes issue with the qualifications of an expert, it is his responsibility to bring the issue to the attention of the trial court. The proponent has no obligation to seek and obtain the type of advance ruling suggested by appellant. In any event, the record demonstrates Dr. Blanchard was well-qualified as an expert, and there would have been no basis for such objection. She testified she is a plastic surgeon and has been licensed to practice medicine in Ohio since 1976. She attended medical school at Hahnemann University in Philadelphia. She was an intern and resident at the *Page 13 
Cleveland Clinic. She has practiced plastic surgery at Cleveland Metro Hospital and Lake Hospital. She is a staff member at Lake Hospital. She is board-certified nationally in plastic surgery. She has written numerous scholarly papers and is a member of several professional organizations.
 {¶ 41} Dr. Blanchard testified the scar on Officer Sprague's face was permanent in that she would never be able to correct it. Appellant never objected to this testimony, and failed to preserve the issue for appeal.
 {¶ 42} Finally, appellant objects that the doctor's opinions were not stated to a "reasonable degree of medical certainty." Again, appellant failed to object on this basis in the trial court, and this argument is therefore waived on appeal. Appellant does not argue that his failure to object amounted to plain error, and we are unable to discern any conceivable basis for plain error in this regard.
 {¶ 43} Appellant's first assignment of error is not well-taken.
 {¶ 44} For his second assignment of error, appellant alleges:
 {¶ 45} "The trial court committed reversible error when it imposed a twelve month sentence for appellant's conviction of R.C. Sec. 2921.34, as there was insufficient evidence to support a finding for which offense appellant was being detained."
 {¶ 46} Appellant argues that because the state failed to present any evidence in support of the degree of offense for which he was detained, the evidence was insufficient concerning a finding required by this offense and his conviction must be reversed. *Page 14 
 {¶ 47} R.C. 2921.34(A)(1) defines the offense of escape as follows: "No person, knowing the person is under detention or being reckless in that regard, shall purposely break or attempt to break the detention * * *."
 {¶ 48} Under R.C. 2921.34(C), escape is a felony of the second degree when the most serious offense for which the person is detained is a felony of the second degree or a more serious offense; a felony of the third degree when the most serious offense for which the person is detained is a third, fourth, or fifth degree felony; or a felony of the fifth degree when the most serious offense for which the person was detained is a misdemeanor or he was found not guilty by reason of insanity and his detention consisted of institutionalization regarding competence to stand trial.
 {¶ 49} The indictment alleges the most serious offense for which appellant was under detention was robbery, a felony of the second degree; however, the state presented no evidence on this issue. As the trial court stated: "there was no evidence presented during the course of the trial as to what [appellant] was actually being incarcerated for. That being the case, the court is required, by law, to presume that he was being held on the least serious offense which would qualify or classify this crime then as a felony of the fifth degree in accordance with the evidence and the finding of the jury." The court then proceeded to impose the sentence that would apply if appellant had been under detention for a misdemeanor at the time of his escape.
 {¶ 50} The problem with this procedure is that there was no evidence in the record that appellant was under detention for a misdemeanor or any other offense. The state does not explain its failure to present this evidence, and, apparently, it simply *Page 15 
forgot to present evidence concerning the degree of offense for which appellant was detained. We note that appellant failed to object to the lack of evidence of the basis of appellant's detention, the lack of any jury instruction on the jury's need to make a finding concerning the basis of appellant's detention, and the court's efforts to cure the state's error. In State v. Wamsley, 7th Dist. No. 05 CO 11,2006-Ohio-5303, the court held that the trial court's failure to instruct the jury on all elements of the offense charged constituted plain error. In State v. Smith (Jan. 20, 1989), 11th Dist. No. 1720,1989 WL 4275, this court held that a failure to instruct the jury on an essential element of the crime charged constitutes plain error requiring automatic reversal, whether or not there was an objection at trial. In arriving at that conclusion, this court examined the jury instructions and found that the trial court did not instruct the jury as to the element at issue. In the case sub judice, the Ohio Jury Instructions indicate that the underlying offense for which the defendant is detained is a finding which must be made by the jury. 2005-521 OJI Archive Sec. 521.34(A)(1).
 {¶ 51} We have reviewed the jury instructions in this case, and it is clear that the trial court did not instruct the jury concerning the finding it was required to make about the degree of offense for which appellant was detained. As a result, based on our holding inSmith, we have no alternative but to hold the court committed plain error in not instructing the jury concerning this finding it was required to make. The court could not cure the error by presuming appellant was detained for the least form of offense for which appellant might have been jailed because the record does not indicate the types of offenses or situations for which appellant might have been detained in the county jail. *Page 16 
 {¶ 52} The state's argument that the trial court was merely following statutory procedure under R.C. 2945.75 hardly addresses the issue. That section provides that when an additional element makes an offense more serious, a verdict shall state whether such additional element is present, and, if not, the verdict constitutes a guilty finding of the least degree of the offense charged.
 {¶ 53} The problem here is two-fold: (1) there is no evidence in the record concerning the basis of appellant's detention and (2) the trial court did not instruct the jury concerning its obligation to make this finding. While we recognize it is not likely, appellant could have been jailed on some basis other than the offenses listed at R.C. 2921.34, such as civil contempt. While we recognize the trial court was attempting to achieve a just result in light of the lack of evidence on this issue, the state was required to present evidence and the trial court was obligated to instruct the jury on the finding it was required to make.
 {¶ 54} Ohio courts have held that evidence must be presented by the state in its case-in-chief regarding the basis of the defendant's detention to support a charge of escape. State v. Gaskins, 3rd Dist. No. 13-04-12, 2004-Ohio-5427. In Gaskins, the trial court allowed the state to re-open its case to allow it to recall a witness to establish the defendant was incarcerated for a fifth-degree felony at the time of his escape.
 {¶ 55} As a result of the state's failure to present any evidence on this issue and the court's failure to instruct the jury on this finding, we are required to reverse appellant's conviction for escape.
 {¶ 56} Appellant's second assignment of error is well-taken. *Page 17 
 {¶ 57} Appellant alleges for his third assignment of error as follows:
 {¶ 58} "The trial court erred to the prejudice of appellant because the conviction of felonious assault is against the manifest weight of the evidence."
 {¶ 59} In determining whether the judgment is against the manifest weight of the evidence, the court, reviewing the entire record, weighs the evidence and all reasonable inferences, and considers the credibility of the witnesses. The court determines whether, in resolving conflicts in the evidence and deciding witness credibility, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment. Thompkins, supra, at 387.
 {¶ 60} Witness credibility rests solely with the finder of fact, and an appellate court is not permitted to substitute its judgment for that of the jury. State v. Awan (1986), 22 Ohio St.3d 120, 123. The jury is entitled to believe all, part, or none of the testimony of any witness.State v. McDaniel, 10th Dist. No. 06AP-44, 2006-Ohio-5298, at ¶ 3.
 {¶ 61} The role of the reviewing court is to engage in a limited weighing of the evidence in determining whether the state properly carried its burden of persuasion. Thompkins, supra, at 390. If the evidence is susceptible to more than one interpretation, an appellate court must interpret it in a manner consistent with the verdict.State v. Banks, 11th Dist. No. 2003-A-0118, 2005-Ohio-5286, at ¶ 33. *Page 18 
 {¶ 62} Appellant argues there is conflicting testimony because Off. Glosser testified that while Sara was on the floor, he saw appellant kick her in her left side and punch her, while inmate Jerry Pegram said that while he watched the incident he did not see her being kicked. This divergence in the testimony does not reflect a conflict because, for whatever reason, Pegram may not have been in a position to see appellant kick Sara and punch her the second time. The medical testimony indicated she was injured on her left side and abdomen, and this evidence is consistent with Off. Glosser's testimony. Finally, to the extent there was any conflict, the jury was entitled to believe all, part, or none of Pegram's testimony. The jury obviously chose to believe Off. Glosser, and we cannot say the jury clearly lost its way in doing so.
 {¶ 63} We do not agree with appellant's argument that there is conflicting testimony that Sara lost consciousness. She testified to this effect, and no witnesses testified otherwise. Off. Glosser testified that when he returned to Sara after attempting to restrain appellant, she was disoriented. This evidence corroborates Sara's testimony. She testified she did not understand the acronym "OLOC" on a form someone else had prepared meant "no loss of consciousness" when she was asked to sign it. We also note that Sara reported to her various medical care providers shortly after the attack that she had lost consciousness.
 {¶ 64} Finally, appellant argues there was minimal evidence concerning whether appellant acted knowingly and whether Sara sustained disfigurement. This is a sufficiency argument rather than a manifest weight argument, which we have addressed under appellant's first assignment of error. *Page 19 
 {¶ 65} Appellant's third assignment of error is not well-taken.
 {¶ 66} Appellant states for his fourth assignment of error:
 {¶ 67} "The trial court erred to the prejudice of Appellant because the conviction of escape is against the manifest weight of the evidence."
 {¶ 68} Because we vacate appellant's conviction for escape, appellant's fourth assignment of error is moot.
 {¶ 69} For his fifth assignment of error, appellant alleges:
 {¶ 70} "The trial court committed plain erred [sic] to the prejudice of Appellant for giving an incomplete jury instruction."
 {¶ 71} Because we vacate appellant's conviction for escape, appellant's fifth assignment of error, which argues the jury instruction on escape was incomplete, is moot.
 {¶ 72} For the reasons stated in the Opinion of this court, it is the judgment and order of this court that the judgment of the Ashtabula County Court of Common Pleas is affirmed in part and reversed in part. Appellant's conviction for felonious assault and assault is affirmed. His conviction for escape is reversed and vacated.
 COLLEEN MARY OTOOLE, J., MARY JANE TRAPP, J., concur. *Page 1