[Cite as *State v. Anderson*, 2022-Ohio-3486.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## TRUMBULL COUNTY

STATE OF OHIO,

        Plaintiff-Appellee,

- vs -

JAMICHAEL ANDERSON,

        Defendant-Appellant.

CASE NO. 2021-T-0056

Criminal Appeal from the
Court of Common Pleas

Trial Court No. 2021 CR 00385

## O P I N I O N

Decided: September 30, 2022
Judgment: Reversed and remanded

*Dennis Watkins,* Trumbull County Prosecutor, and *Ryan J. Sanders,* Assistant Prosecutor, Administration Building, Fourth Floor, 160 High Street, N.W., Warren, OH 44481 (For Plaintiff-Appellee).

*Jason M. Jordan,* Jason M. Jordan Legal Services, LLC, 3580 Darrow Road, Stow, OH 44224 (For Defendant-Appellant).

CYNTHIA WESTCOTT RICE, J.

{¶1} Appellant, Jamichael Anderson, appeals the November 17, 2021 Judgment Entry of the Trumbull County Court of Common Pleas sentencing him to 12-months imprisonment following a jury trial. On appeal, Mr. Anderson challenges the sufficiency of the evidence presented at trial. For the reasons set forth herein, the judgment is reversed and remanded.

{¶2} Following his release from Nobel Correctional Institution in Caldwell, Ohio on February 17, 2021, Mr. Anderson was required to report to Oriana House in Akron, Ohio, though whether he received notice of his reporting requirements is at issue in this

appeal. When he did not report, his Parole Office, Kayla Miller, filed a sanction against him, and he was arrested on May 23, 2021.

{¶3}   Mr. Anderson was indicted on one count of Escape, a felony of the fifth degree, in violation of R.C. 2921.34(A)(3)&(C)(3). He pleaded not guilty, and the case proceeded to trial before a jury. At the close of the state's arguments, defense counsel moved for dismissal arguing the state failed to provide evidence on each essential element. The court denied the motion. Ultimately, Mr. Anderson was found guilty and sentenced to 12-months imprisonment. Mr. Anderson filed the instant appeal, assigning one error for our review, which states:

> {¶4}   The trial court committed reversible error when it failed to grant Defendant-Appellant's Motion for judgment of acquittal where the State failed to provide sufficient evidence to meet all of the essential elements of the charge of Escape.

{¶5}   "A motion for acquittal may be granted only when, construing the evidence most strongly in favor of the state, the evidence is insufficient to sustain a conviction." *State v. Grate*, 164 Ohio St.3d 9, 2020-Ohio-5584, ¶146, citing *State v. Scott*, 6th Dist. Sandusky No. S-02-026, 2003-Ohio-2797, ¶20 and Crim.R. 29. ""'[S]ufficiency" is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law.'" *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997), quoting Black's Law Dictionary 1433 (6th Ed.1990). "The heart of a sufficiency allegation is that the prosecution failed to present evidence on each element of its claim." *State v. Coleman*, 11th Dist. Ashtabula No. 2006-A-0075, 2007-Ohio-3204, ¶25, citing *State v. Schlee*, 11th Dist. Lake No. 93-L-082, *14, 1994 WL 738452 (Dec. 23, 1994). "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction

2

is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* "A claim of insufficient evidence invokes a question of due process, the resolution of which does not allow for a weighing of the evidence." *State v. Wright*, 11th Dist. Lake No. 2021-L-107, 2022-Ohio-1815, ¶32, citing *State v. Habo*, 11th Dist. Portage No. 2012-P-0056, 2013-Ohio-2142, ¶14.

**{¶6}** R.C. 2921.34(A)(3), of which Mr. Anderson was convicted, states:

**{¶7}** No person, knowing the person is under supervised release detention or being reckless in that regard, shall purposely break or attempt to break the supervised release detention or purposely fail to return to the supervised release detention, either following temporary leave granted for a specific purpose or limited period, or at the time required when serving a sentence in intermittent confinement.

**{¶8}** On appeal, Mr. Anderson challenges whether the state presented sufficient evidence that he was given notice of where, when, and to whom to report for his post-release control. Deborah King, Administrative Assistant I at Nobel Corrections Institute where Mr. Anderson was imprisoned, testified that prior to the Covid-19 pandemic, the parole officers would meet with inmates prior to their release and have them sign various paperwork. Due to the pandemic, however, the parole officers were working from home, and Ms. King was tasked with having inmates sign the Conditions of Supervision form prior to being released and parole officers met with inmates virtually. However, nothing in the record establishes that a parole officer met virtually with Mr. Anderson prior to his release.

3

{¶9} Ms. King also testified that it was not her role to give inmates their release paperwork, which contained their reporting requirements: "I don't give that to him, the cashier's office does the day he leaves. Unless – if he leaves on a weekend, he will receive that – he'll sign for everything and then he will receive it in a manilla envelope when he leaves." She testified that the release paperwork tells released inmates what day, what time, and to whom to report following their release; however, she did not see the release paperwork for Mr. Anderson. Furthermore, the Conditions of Supervision form that she had Mr. Anderson sign did not contain this information.

{¶10} DEFENSE COUNSEL: * * * Is there anything on this that tells Mr. Anderson who, what, when, where, why to report to on what day or anything on this form? This Conditions of Supervision?

{¶11} MS. KING: Not on this form. It does not. * * * But he would get that when he – the day he is released.

{¶12} DEFENSE COUNSEL: But you didn't see that?

{¶13} MS. KING: I didn't see that. * * *

{¶14} Next Kayla Miller, the parole officer at the Ohio Department of Rehabilitation and Corrections to whom Mr. Anderson was assigned, testified that she received a copy of the Report Instructions that Mr. Anderson received upon his release, which include where, when, and to whom he was required to report, though these documents were not submitted as evidence. She also testified that Mr. Anderson had been on post-release control in the past, and that he would have known the procedures related to post-release control reporting.

{¶15} The state notes that at no point in his conversations with Ms. King did Mr. Anderson ever indicate or claim that he was unaware of his reporting requirements. On the other hand, nothing in the record indicates that Mr. Anderson conceded that he was

4

aware of his reporting requirements.  In an attempt to show Mr. Anderson acted with intent, the state presented a recorded call made from Mr. Anderson to his mother a few days before trial, in which he stated that all he did was not report to his parole officer.  However, this call was made after Mr. Anderson was indicted and fully aware of the charges against him, thus, it does not support the state's argument that at the time he failed to report to his parole officer, he knew when and how he was to report to his parole officer.  Moreover, during the call, he states that all he signed was the list of rules to abide by while on post-release control, presumably the Conditions of Supervision form to which Ms. King testified.

{¶16}  In sum, the state presented evidence that Mr. Anderson was aware that he was under post-release control; that he had previously been under post-release control and should have known the procedures; and that his parole officer received a copy of the same paperwork he received when he was released which contained when and where he was required to report.  However, this paperwork was not entered into evidence; and no one with firsthand knowledge testified that Mr. Anderson received a copy.  Moreover, Ms. King testified at one point that "if he leaves on a weekend, he will receive [the reporting requirement paperwork]" while Ms. Miller testified that he was released on February 17, 2021, a Wednesday. Even though Ms. King previously worked in the cashier's office where they gave out the reporting paperwork, she testified that procedures and job duties for various personnel had recently changed due to Covid-19, including that her role now required giving inmates their Conditions of Supervision paperwork and that the parole officers were no longer meeting with inmates in person prior to their release to go through paperwork.  No testimony established that a parole officer met with Mr. Anderson virtually prior to his release.

5

Case No. 2021-T-0056

{¶17} There can be no doubt that Mr. Anderson knew he was on post-release control. However, even though Mr. Anderson had been on post-release control before, and been convicted of Escape in the past, the state was required to provide evidence of every element of Escape, including sufficient evidence to establish beyond a reasonable doubt that Mr. Anderson acted purposely in failing to report. To that end, the state needed to show that Mr. Anderson had knowledge, or acted recklessly in failing to have knowledge, of his reporting requirements. The testimony that the standard procedure was to provide inmates with their post-release reporting requirements was insufficient in this case to establish that Mr. Anderson had received such notice because there was no first-hand-knowledge testimony that Mr. Anderson received that notice, and there was testimony that there were recent procedural changes due to the pandemic. Without that showing, we find that no reasonable finder of fact could find beyond a reasonable doubt that Mr. Anderson acted purposely in failing to report for post-release control when viewing the evidence in favor of the prosecution. Mr. Anderson's conviction is therefore vacated.

{¶18} Accordingly, Mr. Anderson's sole assignment of error has merit.

{¶19} In light of the foregoing, the judgment of the Trumbull County Court of Common Pleas is reversed and remanded.


THOMAS R. WRIGHT, P.J.,

MATT LYNCH, J.,

concur.


6

Case No. 2021-T-0056