[Cite as *State v. Brown*, 2019-Ohio-4753.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee/ [Cross-Appellant], | : | No. 19AP-40 |
| | : | (C.P.C. No. 16CR-5580) |
| v. | | |
| | : | (REGULAR CALENDAR) |
| Ronald E. Brown, | : | |
| Defendant-Appellant/ [Cross-Appellee]. | : | |
| | : | |

D E C I S I O N

Rendered on November 19, 2019

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Michael P. Walton*, for plaintiff-appellee. **Argued:** *Michael P. Walton*.

**On brief:** *Todd W. Barstow*, for defendant-appellant. **Argued:** *Todd W. Barstow*.

APPEAL from the Franklin County Court of Common Pleas

KLATT, P.J.

{¶ 1} Defendant-appellant/cross-appellee, Ronald E. Brown ("defendant"), appeals from the December 20, 2018 judgment of the Franklin County Court of Common Pleas. Plaintiff-appellee/cross-appellant, State of Ohio ("the state"), appeals from the same judgment. For the reasons set forth below, we affirm in part, reverse in part, and remand the matter with instructions.

{¶ 2} Shortly before 5:00 a.m. on May 1, 2015, Columbus Police Officers Pennell and Johnson were dispatched to an apartment at 6216 Lowridge on a report of a burglary

in progress. Upon arrival, the officers were met at the door by the woman who had reported the burglary, who averred that the man who was trying to break in was now inside the apartment. The officers found the man, later identified as defendant, in the kitchen/hallway area. Defendant was ordered into the living room, and he complied without incident. Because he had been dispatched to the scene on a reported burglary, Pennell handcuffed defendant and conducted a pat-down search of his outer clothing to determine if he was carrying a weapon. During the pat-down, defendant spontaneously stated that he had a baggie of powder cocaine in his right pocket. Pennell searched defendant's right pocket and recovered the cocaine. Defendant was placed under arrest. Shortly after he was arrested, defendant informed the officers that he lived at the apartment on at least a part-time basis.

{¶ 3} On October 7, 2016, defendant was indicted on one count of possession of cocaine in violation of R.C. 2925.11, a felony of the second degree. He initially entered a not guilty plea. On June 27, 2017, defendant filed a motion to suppress the cocaine recovered during the pat-down search. Following a September 5, 2017 evidentiary hearing, the trial court orally denied the motion. On October 10, 2017, defendant filed a motion to dismiss the indictment on speedy trial grounds. Following a hearing on November 16, 2017, the trial court denied the motion.

{¶ 4} On the same day, November 16, 2017, the trial court conducted a plea hearing during which defendant entered a no contest plea to possession of cocaine as charged in the indictment; the trial court found him guilty. Following a sentencing hearing on December 19, 2018, the trial court imposed a prison term of five years and determined that defendant was entitled to 199 days of jail-time credit. The trial court memorialized its judgment in an entry filed December 20, 2018.

{¶ 5} Defendant timely appeals, advancing the following three assignments of error for this court's review:

> I. The trial court erred to the prejudice of appellant by overruling his motion to suppress evidence.
>
> II. The trial court erred to the prejudice of appellant by overruling his motion to dismiss.

III. Appellant's trial counsel was ineffective, thereby depriving him of his [right] to effective assistance of counsel under the United States and Ohio Constitutions.

{¶ 6}    In his first assignment of error, defendant contends the trial court erred in denying his motion to suppress. We disagree.

{¶ 7}    Appellate review of a trial court's disposition of a motion to suppress presents a mixed question of law and fact. *State v. Burnside,* 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. When considering a motion to suppress, the trial court assumes the role of trier of fact and is thus in the best position to resolve factual questions and evaluate witness credibility. *Id.,* citing *State v. Mills,* 62 Ohio St.3d 357, 366 (1992). As such, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. *Id.,* citing *State v. Fanning,* 1 Ohio St.3d 19 (1982). "Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.,* citing *State v. McNamara,* 124 Ohio App.3d 706 (4th Dist.1997).

{¶ 8}    Defendant challenges the constitutionality of the detention and pat-down search, specifically claiming that the state failed to demonstrate that Pennell had a reasonable, articulable suspicion of criminal activity sufficient to detain him and conduct a pat-down search. Defendant maintains that because the pat-down search was constitutionally impermissible, the evidence (cocaine) discovered during that search was inadmissible. We note that defendant's argument does not include a challenge to the evidence establishing that during the pat-down search he spontaneously admitted to having cocaine on his person.

{¶ 9}    "In general, '[t]he Fourth Amendment of the United States Constitution, applied to the states through the Fourteenth Amendment, protects persons against unreasonable searches and seizures.' " *State v. Richardson,* 10th Dist. No. 15AP-870, 2016-Ohio-5801, ¶ 18, quoting *State v. Jones,* 9th Dist. No. 12CA010270, 2013-Ohio-2375, ¶ 8. For a search or seizure to be reasonable, it must be based upon probable cause and executed pursuant to a warrant, unless an exception to the warrant requirement applies. *State v. Battle,* 10th Dist. No. 10AP-1132, 2011-Ohio-6661, ¶ 26, citing *State v. Moore,* 90 Ohio St.3d 47, 49 (2000). "One such exception, recognized by the United States Supreme Court in *Terry v. Ohio,* 392 U.S. 1 (1968), permits a police officer to 'stop or detain an individual

without probable cause when the officer has a reasonable suspicion, based on specific, articulable facts, that criminal activity is afoot.' " *State v. Pinckney,* 10th Dist. No. 14AP-709, 2015-Ohio-3899, ¶ 18, quoting *State v. Jones,* 188 Ohio App.3d 628, 2010-Ohio-2854, ¶ 16 (10th Dist.).    "Reasonable suspicion entails some minimal level of objective justification, 'that is, something more than an inchoate and unparticularized suspicion or "hunch," but less than the level of suspicion required for probable cause.' " *Jones* at ¶ 17, quoting *State v. Jones,* 70 Ohio App.3d 554, 556-57 (2d Dist.1990), citing *Terry* at 27.

{¶ 10}  "The propriety of an investigative stop [or detention] by a police officer must be viewed in light of the totality of the surrounding circumstances." *State v. Bobo,* 37 Ohio St.3d 177 (1988), paragraph one of the syllabus.  "[T]he circumstances surrounding the stop [or detention] must 'be viewed through the eyes of a reasonable and cautious police officer on the scene, guided by his experience and training.' " *Id.* at 179, quoting *United States v. Hall,* 525 F.2d 857, 859 (D.C.Cir.1976); *State v. Michael,* 10th Dist. No. 12AP-508, 2013-Ohio-3889, ¶ 12.

{¶ 11}  Thus, *Terry* permits a law enforcement officer who suspects criminal activity to lawfully stop or detain an individual and make a limited search of that person based on grounds less than probable cause.  *State v. Andrews,* 57 Ohio St.3d 86, 89 (1991).  The standard to perform an investigative search, like the standard for an investigatory stop or detention, is an objective one based on the totality of the circumstances.  *Terry* at 27.  The legal justification for such a search is the protection of the police officer and others nearby, and the permissible scope of the search is limited to a search reasonably designed to discover concealed "guns, knives, clubs, or other hidden instruments for the assault of the police officer." *Id.* at 29.  Thus, an officer must have a reasonable individualized suspicion that the subject is armed and dangerous before the officer may conduct a pat-down for weapons. *Id.*

{¶ 12}  Here, the testimony presented by Pennell at the suppression hearing established that the detention and subsequent pat-down search of defendant were legally justified under *Terry.*  Pennell, a 10-year veteran of the Columbus Police Department, testified that police officers typically approach the scene of a burglary in progress "with high awareness."  (Sept. 5, 2017 Tr. at 6.)    Pennell acknowledged that he was aware, via information provided in the dispatch, that the alleged burglar was the father of the woman's

child; however, when the woman met the officers at the door, she stated only that the man who was trying to break in was now inside the apartment. She then directed the officers to where defendant was located inside the apartment. The woman provided no information to the officers regarding her relationship, if any, with defendant and did not recant her statement to the police dispatcher that defendant was breaking into her house.

{¶ 13} Pennell further testified that once defendant emerged from the kitchen area, Pennell immediately detained him "[b]ecause the facts that we had at the time was that he had just broken into that apartment." *Id.* at 7. He then conducted a pat-down search of defendant's outer clothing "[f]or my protection, for the protection of other people within the residence." *Id.* Pennell described his motivation for, and the mechanics of, the pat-down search, stating "[p]hysically you're outside of the clothing and you're patting and you're feeling for things like weapons because an offense like a burglary typically comes with some sort of weapon. And we're just * * * making sure that the suspect doesn't have any weapons readily available." *Id.* at 8.

{¶ 14} Thus, under the totality of the surrounding circumstances in this case, Pennell's detention and subsequent pat-down search of defendant was not based on a mere suspicion or hunch but on articulable facts that would permit a reasonably prudent police officer to believe that defendant had broken into the apartment and that he could be armed and dangerous.

{¶ 15} We do not agree with defendant's contention that the detention and subsequent pat-down search were illegal because Pennell testified on cross-examination that upon approaching the apartment, he heard nothing indicating a disturbance inside and did not observe any damage to the door; that the woman inside had no visible signs of injury; that defendant made no furtive or suspicious movements, was not angry or combative, made no attempt to flee or hide, and immediately complied with the officers' orders. Defendant further argues that Pennell did not testify that he saw any suspicious bulges or other signs of a weapon on defendant's person prior to patting him down. Defendant also maintains that Pennell's testimony that he had no reason to believe that defendant "had anything illegal on him * * * other than the fact that a lot of times crimes go with weapons" is "not a specific and articulable fact that was present in this situation." (Defendant's brief at 3.)

{¶ 16} In support of his contention, defendant cites two cases from other appellate districts, both of which are factually distinguishable from the present case.  In *State v. Locklear,* 8th Dist. No. 90429, 2008-Ohio-4247, the police responded to an address on a citizen complaint of drug activity, fighting, and loud music.  When police arrived, several men, including Locklear, were standing outside the house on the porch and the lawn.  Concerned that someone in the group might have weapons, the officers patted-down all the men before checking their identifications.  During the pat-down, the police recovered a gun from Locklear's pants pocket.   The appellate court concluded that the trial court erroneously denied Locklear's motion to suppress, reasoning that the police did not have a reasonable suspicion that he was armed and dangerous when he was searched, as the record established that Locklear and the others were searched within the first three minutes of the officers' arrival on the scene, without any assessment by the police of any suspicious criminal conduct or whether the individuals posed a risk to the officers' safety. *Id.* at ¶ 27.

{¶ 17} In *State v. Gilmer*, 5th Dist. No. 2009 CA 00283, 2010-Ohio-4631, police officers entered a bar pursuant to a complaint alleging that a bar employee had a gun and several bags of pills in the bar the preceding night.  There were eight male patrons in the bar at the time the police entered.   The police asked all eight men to produce identification to prove they were over the age of twenty-one.  After Gilmer was unable to produce identification, one of the officers patted him down for weapons.  Pursuant to the pat-down, the officer recovered a bag of marijuana from Gilmer's pocket.  At the suppression hearing, the officer admitted that he never saw Gilmer with a gun or any item that looked like a weapon, and that he patted Gilmer down only because he appeared to be very nervous.  The appellate court concluded that the trial court erroneously denied Gilmer's motion to suppress, reasoning that Gilmer's detention was unconstitutional because the officer did not have a reasonable suspicion based on specific and articulable facts that criminal behavior had occurred or was imminent. *Id.* at ¶ 37.  The court further determined that the pat-down search was unconstitutional, as the police did not have a reasonable individualized suspicion that Gilmer was armed and dangerous. *Id.* at ¶ 41.  In so holding, the court noted that the officer who conducted the pat-down testified that he did not go to the bar to find Gilmer, that he had no reports that Gilmer was involved in any criminal

activity, that he never saw Gilmer with a gun, that he did not see a bulge of any metal object that looked like a weapon or any other suspicious objects on Gilmer. *Id.*

{¶ 18} Both Locklear and Gilmer were part of a large group of individuals the police detained and patted down without specific and articulable facts demonstrating that any of the individuals, including Locklear and Gilmer, were presently involved in criminal activity or that criminal activity was imminent. In addition, Locklear and Gilmer were patted down without specific and articulable facts demonstrating a reasonable individualized suspicion that they were armed and dangerous. In contrast, the officers in the instant case were investigating extant criminal activity, i.e., a burglary in progress, and defendant was the sole subject of that investigation. Further, Pennell testified that a burglary situation is one the police approach with "high awareness" due to the possibility that the burglar may be armed and dangerous. Indeed, Pennell testified that "an offense like a burglary typically comes with some sort of weapon." (Sept. 5, 2017 Tr. at 8). Unlike the circumstances in *Locklear* and *Gilmer*, the totality of the surrounding circumstances in the present case demonstrated specific, articulable facts warranting the detention and subsequent pat-down search of defendant. Accordingly, the trial court did not err in denying defendant's motion to suppress.

{¶ 19} Appellant's first assignment of error is overruled.

{¶ 20} In his second assignment of error, defendant maintains the trial court erred in denying his motion to dismiss the indictment for failure to bring him to trial within 180 days of his demand for final disposition pursuant to R.C. 2941.401.[1] We disagree.

{¶ 21} An appellate court's review of a trial court's disposition of a motion to dismiss based upon a violation of speedy trial provisions involves a mixed question of law and fact. *State v. Watson,* 10th Dist. No. 13AP-148, 2013-Ohio-5603, ¶ 12, citing *State v. Fultz,* 4th Dist. No. 06CA2923, 2007-Ohio-3619, ¶ 8, citing *State v. Brown,* 131 Ohio App.3d 387, 391 (4th Dist.1998). A reviewing court must give due deference to the trial court's findings of fact if they are supported by competent, credible evidence, but will independently review

---

[1] Although defendant's motion to dismiss referenced both his constitutional and statutory speedy trial rights, he did not advance an argument with respect to his constitutional rights, nor has he developed one on appeal. Accordingly, we address only whether his statutory speedy trial rights were violated. *See* App.R. 16(A)(7).

whether the trial court correctly applied the law to the facts of the case. *Id.*, citing *Fultz.* Because the trial court orally denied defendant's motion to dismiss without issuing a decision, the record does not include any findings of fact. Thus, we are free to make an independent factual review. *State v. Brooks*, 4th Dist. No. 17CA3, 2018-Ohio-2210, ¶ 22.

{¶ 22} " 'An accused is guaranteed the constitutional right to a speedy trial pursuant to the Sixth and Fourteenth Amendments of the United States Constitution and Ohio Constitution, Article I, Section 10.' " *State v. Irish,* 3d Dist. No. 10-18-13, 2019-Ohio-2765, ¶ 11, quoting *State v. Dahms,* 3d Dist. No. 13-16-16, 2017-Ohio-4221, ¶ 102. " 'In Ohio, the right to a speedy trial is implemented by statutes that impose a duty on the state to bring the defendant to trial within a specified time.' " *Id.* at ¶ 11, quoting *State v. Melampy,* 12th Dist. No. CA2007-04-008, 2008-Ohio-5838, ¶ 9.

{¶ 23} The speedy trial statute at issue in this case is R.C. 2941.401, which is a "specific" speedy trial statute applicable only to defendants who are imprisoned in correctional institutions in the state of Ohio and face charges for crimes separate from those for which they are already imprisoned. *Irish* at ¶ 13, citing *Melampy* at ¶ 9. R.C. 2941.401 provides in pertinent part:

> When a person has entered upon a term of imprisonment in a penal or correctional institution of this state, and when during the continuance of the term of imprisonment there is pending in this state any untried indictment, information, or complaint against the prisoner, he shall be brought to trial within one hundred eighty days after he causes to be delivered to the prosecuting attorney and the appropriate court in which the matter is pending, written notice of the place of his imprisonment and a request for final disposition to be made of the matter, except that for good cause shown in open court, with the prisoner or his counsel present, the court may grant any necessary or reasonable continuance.

{¶ 24} R.C. 2941.401 further provides:

> If the action is not brought to trial within the time provided, subject to continuance allowed pursuant to this section, no court any longer has jurisdiction thereof, the indictment, information, or complaint is void, and the court shall enter an order dismissing the action with prejudice.

{¶ 25} R.C. 2941.401 places the initial duty on the accused to notify the prosecutor and the court of his place of incarceration and to request final disposition of outstanding

charges. *State v. Hairston,* 101 Ohio St.3d 308, 2004-Ohio-969, ¶ 20. "In its plainest language, R.C. 2941.401 grants an incarcerated defendant a chance to have all pending charges resolved in a timely manner, thereby preventing the state from delaying prosecution until after the defendant has been released from his prison term." *Id.* at ¶ 25. "R.C. 2941.401 is mandatory and must be strictly complied with by the trial court." *Irish* at ¶ 13, citing *State v. Smith,* 140 Ohio App.3d 81, 86 (3d Dist.2000). The 180-day period set forth in R.C. 2941.401 within which a criminal defendant imprisoned on another charge must be tried does not commence until the defendant files notice of his request for disposition of the untried indictment. *State v. Logan,* 71 Ohio App.3d 292, 296 (10th Dist.), citing *State v. Turner,* 4 Ohio App.3d 305 (9th Dist.1982).

{¶ 26} Here, defendant was arrested on May 1, 2015. The charges were dismissed and he was not indicted until October 7, 2016. At that time, defendant was serving a prison term at the Noble Correctional Institution for a prior unrelated conviction. On October 12, 2016, defendant completed and signed a form entitled "Inmate's Notice of Place of Imprisonment and Request for Disposition of Indictments, Information or Complaints" ("Notice"), indicating his desire for a disposition of the untried indictment within 180 days pursuant to R.C. 2941.401. The Franklin County Prosecutor's Office received a copy of the Notice on October 20, 2016.[2] The 180-day period set forth in R.C. 2941.401 thus commenced on October 21, 2016.[3]

{¶ 27} In the present case, 396 days elapsed between delivery of defendant's Notice to the prosecuting attorney on October 21, 2016 and entry of his no contest plea on November 20, 2017.[4] An accused establishes a prima facie case for dismissal based on a

---

[2] On appeal, defendant contends the speedy trial time period commenced on October 12, 2016, the date he signed the Notice. The state counters that the speedy trial time period began to run on the date the Notice was received by the prosecutor. At the November 16, 2017 hearing on defendant's motion to dismiss the indictment, the state asserted that it received a copy of the Notice on October 20, 2016. Defendant did not challenge this assertion; thus, we will accept this procedural fact as true for purposes of appeal. Moreover, at least one appellate court has determined that the speedy trial time period begins to run on the date the prosecutor receives the notice, not the date of mailing. *State v. McIntire,* 6th Dist. No. H-10-004, 2011-Ohio-1544, ¶ 23.

[3] The speedy trial time calculation begins on the day following delivery to the prosecuting attorney, in this case, October 21, 2016. *State v. Shepherd,* 11th Dist. No. 2003-A-0028, 2006-Ohio-4315, ¶ 39.

[4] The plea form itself is dated November 16, 2017; however, the form was not filed until November 20, 2017.

speedy trial violation pursuant to R.C. 2941.401 when the accused demonstrates that more than 180 days elapsed before trial. *Id.* " 'Once a defendant establishes a prima facie case for dismissal, the state bears the burden to prove that time was sufficiently tolled and the speedy trial period extended.' " *State v. Jones,* 10th Dist. No. 11AP-1123, 2012-Ohio-3767 at ¶ 17, quoting *State v. Carmon,* 10th Dist. No. 11AP-818, 2012-Ohio-1615, ¶ 15. " '[T]he time period in which to bring a defendant to trial may be extended for any of the reasons enumerated in R.C. 2945.72.' " *Id.*, quoting *Carmon* at ¶ 14. The tolling provisions set forth in R.C. 2945.72 apply to R.C. 2941.401. *State v. Colon,* 5th Dist. No. 09-CA-232, 2010-Ohio-2326, ¶ 27; *State v. Shepherd,* 11th Dist. No. 2003-A-2008, 2006-Ohio-4315, ¶ 42-44; *State v. Patterson,* 6th Dist. No. WD-17-045, 2018-Ohio-4672, ¶ 19. Hence, the proper standard of review in speedy trial cases is to simply count the number of days passed, while determining to which party the time is chargeable, as directed in R.C. 2945.72. *Jones* at ¶ 15. "In considering the appeal of a trial court's denial of a motion to dismiss based upon a statutory speedy trial violation, the appellate court independently calculates whether the time to bring a defendant to trial expired." *Columbus v. LaMarca,* 10th Dist. No. 15AP-440, 2015-Ohio-4467, ¶ 18.

{¶ 28} Two key concepts direct how a court must charge the days when calculating a potential speedy trial violation: waiver and tolling. *Watson*, 10th Dist. No. 13AP-148, 2013-Ohio-5603, at ¶ 16, citing *State v. Gonzalez,* 10th Dist. No. 08AP-716, 2009-Ohio-3236, ¶ 11. An accused may waive speedy trial rights, and those days for which the accused waives the right do not count toward the state's deadline. *Id.*, citing *Gonzalez* at ¶ 12. Tolling occurs by operation of R.C. 2945.72 under certain circumstances. *Id.* at ¶ 16, citing *Gonzalez* at ¶ 12. "Because the tolling of time occurs by operation of the statute, the defendant does not have to agree to the tolling of time." *Id.,* citing *Gonzalez.* In addition, " '[i]t is well-established that a defendant is bound by the actions of counsel in waiving speedy trial rights by seeking or agreeing to a continuance, even over the defendant's objections.' " *Id.* at ¶ 22, quoting *State v. Glass,* 10th Dist. No. 10AP-558, 2011-Ohio-6287, ¶ 17.

{¶ 29} "R.C. 2945.72 contains an exhaustive list of events and circumstances that extend the time within which a defendant must be brought to trial." *State v. Ramey,* 132 Ohio St.3d 309, 2012-Ohio-2904, ¶ 24. The pertinent tolling provisions applicable to this

case are R.C. 2945.72(E) and (H). R.C. 2945.72(E) provides that speedy trial time may be tolled by "[a]ny period of delay necessitated by reason of a plea in bar or abatement, motion, proceeding, or action made or instituted by the accused." R.C. 2945.72(H) states that speedy trial time may be tolled by "[t]he period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion." "Pursuant to R.C. 2945.72(H), the only continuances which must be reasonable in order to toll the statutory time limits are those requested by the state or sua sponte by the trial court." *Watson* at ¶ 19, citing *State v. Kist,* 173 Ohio App.3d 158, 2007-Ohio-4773, ¶ 35 (11th Dist.)

{¶ 30} As previously noted, the speedy trial time period commenced on October 21, 2016. No tolling events occurred until November 14, 2016; thus, the 24 days between October 21, 2016 and November 13, 2016 are chargeable to the state. The next day, November 14, 2016, defendant filed a demand for discovery. A defendant's demand for discovery tolls the statutory speedy trial period pursuant to R.C. 2945.72(E). *State v. Truitt,* 10th Dist. No. 10AP-473, 2010-Ohio-5972, ¶ 11. However, the state's response time must be reasonable under the circumstances. *State v. Lair,* 10th Dist. No. 05AP-1083, 2006-Ohio-4109, ¶ 19, citing *State v. Risner,* 3d Dist. No. 13-03-40, 2004-Ohio-186 (noting that defendant's right to a speedy trial was tolled by 16 days due to defendant's discovery request, as the state's response time of 16 days was reasonable). Here, the state provided discovery on November 30, 2016. Thus, none of the days from November 14, 2016 to November 30, 2016 are chargeable to the state, as its 16-day response time was reasonable under *Risner.*

{¶ 31} On the same day it provided discovery, the state filed a reciprocal demand for discovery. Defendant did not respond. A defendant's failure to respond to a reciprocal demand for discovery tolls the speedy trial period for a reasonable period of time. *State v. Palmer,* 112 Ohio St.3d 457, 2007-Ohio-374, paragraph one of the syllabus. Local rules of court may be considered in determining a reasonable amount of time to respond to a discovery request. *Id.* at paragraph three of the syllabus. Loc.R. 75.03 of the Franklin County Court of Common Pleas provides that "[u]pon demand for discovery, it shall be the duty of a party to promptly respond to the request. In any event, discovery should be provided in 21 days from the date of receipt of the demand, except in capital cases." While

a local rule may not undermine the purpose of speedy trial statutes, the local rule, applied to the facts of this case, sets a reasonable time period, and nothing in the record demonstrates other circumstances that would require adjusting the time period set forth in the rule to achieve reasonableness. *See Lair* at ¶ 20-21. Thus, the time between November 30, 2016 and December 21, 2016 is not chargeable to the state.

{¶ 32} No tolling events occurred between December 22, 2016 and January 12, 2017; thus, the state is chargeable with those 22 days. In the meantime, on December 23, 2016, the Supreme Court of Ohio, in *State v. Gonzales,* 150 Ohio St.3d 261, 2016-Ohio-8319 (*"Gonzales I"*), held that in prosecuting cocaine-possession offenses under R.C. 2925.11(C)(4)(b) through (f) involving mixed substances, the state must prove that the weight of the actual cocaine, excluding the weight of any filler materials, meets the statutory threshold. The state of Ohio applied for reconsideration of that judgment on January 3, 2017.

{¶ 33} On January 13, 2017 and March 7, 2017, the state requested continuances to March 1, 2017 and March 13, 2017, respectively, pending the Supreme Court of Ohio's reconsideration of *Gonzales I.* On March 6, 2017, the court vacated its decision in *Gonzales I*, holding that "the entire compound, mixture, preparation, or substance, including any fillers that are part of the usable drug, must be considered for the purpose of determining the appropriate penalty for cocaine possession under R.C. 2925.11(C)(4)." *State v. Gonzales,* 150 Ohio St.3d 276, 2017-Ohio-777, ¶ 3 ("*Gonzales II*"). In examining the reasonableness of state-requested continuances, we look to the particular facts and circumstances of the case. *State v. Madden,* 10th Dist. No. 04AP-1228, 2005-Ohio-4281, ¶ 35, citing *State v. Saffell,* 35 Ohio St.3d 90, 91 (1988). Given that *Gonzales I* would have required the state to seek additional testing to effectively prosecute defendant for cocaine possession, along with the possibility that the court would reconsider and vacate its decision in *Gonzales I,* we conclude these continuances were reasonable under R.C. 2945.72(H) and tolled the speedy trial time. Thus, the period between January 13, 2017 and March 6, 2017, the date the court decided *Gonzales II*, is not chargeable to the state.

{¶ 34} No tolling events occurred between March 7, 2017 and March 13, 2017; thus, those 7 days are chargeable to the state. Defendant's speedy trial rights were again tolled on March 13, 2017, when defendant was granted a continuance to April 20, 2017 to file a

motion to suppress. The continuance entry included a waiver of defendant's speedy trial rights. Pursuant to R.C. 2945.72(H) and defendant's waiver, none of those days are chargeable to the state. No tolling events occurred between April 20, 2017 and April 23, 2017; thus, those 4 days are chargeable to the state. The next tolling event occurred on April 24, 2017, when the parties jointly moved for a continuance to June 8, 2017. "A continuance granted upon the joint motion of the parties tolls time pursuant to R.C. 2945.72(H) because the motion is made, in part, by the defendant." *Watson*, 10th Dist. No. 13AP-148, 2013-Ohio-5603, at ¶ 19, citing *State v. Dillon,* 10th Dist. No. 05AP-679, 2006-Ohio-3312, ¶ 35. Moreover, the continuance entry included a waiver of defendant's speedy trial rights. Therefore, none of the days from April 24, 2017 to June 8, 2017 are chargeable to the state.

{¶ 35} Defendant's speedy trial rights were again tolled on June 8, 2017 when he sought a continuance to July 12, 2017. Pursuant to R.C. 2945.72(H) and defendant's waiver of speedy trial rights, none of those days are chargeable to the state. During the period of this continuance, defendant filed his motion to suppress on June 27, 2017. Pursuant to R.C. 2945.72(E), the filing of a motion to suppress tolls speedy trial time until the court rules on the motion. *LaMarca*, 10th Dist. No. 15AP-440, 2015-Ohio-4467, at ¶ 22.

{¶ 36} Hearing on the motion to suppress was set for July 12, 2017. However, on that day, the parties jointly moved to continue the hearing to August 23, 2017 for the stated purpose that "[defendant was] not conveyed, set for motion hearing, state to respond." (July 12, 2017 Entry 1.) At the hearing on the motion to dismiss, defendant contended that the state should be charged with the 42 days between July 12, 2017 and August 23, 2017 because it was the state's fault that he was not conveyed from prison for the July 12, 2017 hearing on the motion to suppress. The state responded that the continuance tolled speedy trial time because it was made upon motion of both parties, counsel for defendant signed the entry, and the entry included language waiving defendant's speedy trial rights for the period of the continuance. Defendant's counsel argued that without defendant's consent, he did not effectively waive defendant's speedy trial rights because the continuance was necessitated by the state's failure to transport defendant for the suppression hearing. In response, the state argued that it relied upon the waiver, and, even if defendant's counsel did not effectively waive defendant's speedy trial rights, the time was tolled because it was

a reasonable continuance to allow the state to prepare for the suppression hearing. The trial court determined that the continuance was reasonable, stating: "The fact that he was not conveyed was outside the hands of anyone, including the Court, the prosecutor and the defense attorney. And * * * I agree with [the prosecutor] when he says you can't unwaive a waiver, especially after it's been relied on." (Nov. 16, 2017 Tr. at 14.)

{¶ 37} We need not resolve the controversy regarding the July 12, 2017 continuance, however, because during the period of the continuance, defendant's June 27, 2017 motion to suppress remained pending. As noted above, the filing of a motion to suppress tolls speedy trial time until the court rules on the motion. *LaMarca* at ¶ 22. The trial court did not rule on the motion to suppress until September 5, 2017. Accordingly, the July 12, 2017 continuance was essentially irrelevant. Thus, the state is not chargeable with the time between July 12, 2017 and September 5, 2017.

{¶ 38} Moreover, even if defendant's motion to suppress was not still pending, we conclude the continuance was reasonable for the reasons articulated by the trial court at the hearing on the motion to suppress. The request for continuance was made jointly by the parties, was signed by defendant's counsel, and included language waiving defendant's speedy trial rights for the period of the continuance. Although defendant did not sign the continuance, he was bound by the actions of his counsel in waiving his speedy trial rights by agreeing to the continuance. *Watson*, 10th Dist. No. 13AP-148, 2013-Ohio-5603, at ¶ 22.

{¶ 39} The next tolling event occurred on September 5, 2017, when, following the denial of his motion to suppress, defendant moved to continue the case to October 2, 2017. The period between September 5, 2017 and October 2, 2017 is not chargeable to the state pursuant to R.C. 2945.72(H) and the defendant's waiver of his speedy trial rights. The speedy trial period was again tolled from October 2, 2017 to October 11, 2017 pursuant to the parties' joint motion for continuance and defendant's waiver of his speedy trial rights. Thus, none of these days are chargeable to the state.

{¶ 40} On October 10, 2017, defendant filed his motion to dismiss the indictment. Pursuant to R.C. 2945.72(E), the filing of a motion to dismiss tolls speedy trial time until the court rules on the motion. *Watson* at ¶ 18, citing *State v. King,* 3d Dist. No. 9-06-18, 2007-Ohio-335, ¶ 39 (noting that "King's filing of a motion to dismiss [based on a speedy trial violation] tolled speedy trial time until the * * * hearing and ruling on the motion to

dismiss."). Thus, defendant's October 10, 2017 motion to dismiss tolled the speedy trial time until the court denied the motion following a hearing on November 16, 2017. On the same day, defendant entered his no contest plea, which was not filed until November 20, 2017. Thus, the state is chargeable with the 5 days between November 16, 2017 and November 20, 2017.

{¶ 41} Pursuant to our independent calculation, the state was only chargeable with 62 days total: the 24 days between October 21, 2016 and November 13, 2016; the 22 days between December 22, 2016 and January 12, 2017; the 7 days between March 7, 2017 and March 13, 2017; the 4 days between April 20, 2017 and April 23, 2017; and the 5 days between November 16, 2017 and November 20, 2017. Accordingly, final disposition of the charge for which defendant was indicted occurred well within the 180-day time limit imposed by R.C. 2941.401. Because defendant's statutory speedy trial rights were not violated, the trial court did not err in denying his motion to dismiss.

{¶ 42} Defendant's second assignment of error is overruled.

{¶ 43} In his third assignment of error, defendant contends his trial counsel was ineffective based upon the manner in which he pursued the motion to dismiss. Defendant specifically contends that trial counsel miscalculated the speedy trial time.

{¶ 44} To establish ineffective assistance of counsel, an accused must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the accused. *State v. Jackson,* 107 Ohio St.3d 53, 2005-Ohio-5981, ¶ 133 (2005), citing *Strickland v. Washington,* 466 U.S. 668-87 (1984). The failure to make either showing is fatal to the claim. *State v. Bradley*, 42 Ohio St.3d 136, 143 (1989), quoting *Strickland* at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one.").

{¶ 45} Defendant cannot demonstrate prejudice resulting from trial counsel's alleged deficient performance. As resolved in the second assignment of error, final disposition of the offense for which defendant was indicted occurred well within the 180-day time limit required by R.C. 2941.401. Thus, neither the manner in which trial counsel argued the motion to dismiss nor any alleged miscalculation of speedy trial time prejudiced defendant.

{¶ 46} Defendant's third assignment of error is overruled.

{¶ 47} We turn now to the state's motion for leave to file a cross-appeal challenging the trial court's grant of jail-time credit. "[T]he state's authority to pursue an appeal from the decision of the trial court granting jail time credit, as well as the calculation of the number of days to be credited, is not by right under R.C. 2945.67, but rather may only be appealed by leave of court." *State v. Olmstead,* 5th Dist. No. 2007-CA-119, 2008-Ohio-5884, ¶ 10. In so holding, the court noted that R.C. 2945.67(A), which governs appeals by the state in criminal matters, permits appeals as of right only in specified circumstances, i.e., orders granting: (1) motions to dismiss all or any part of an indictment, complaint, or information; (2) motions to suppress; (3) motions for the return of seized property; and, (4) postconviction relief. However, the statute further provides that, with the exception of final verdicts, the state may appeal "any other decision" in a criminal matter "by leave of the court to which the appeal is taken."

{¶ 48} The present action does not fall under any of the categories set forth in R.C. 2945.67(A) providing the state an appeal by right. Accordingly, the state's proper course was to file a motion for leave to appeal to this court,[5] which it did on January 22, 2019. We now grant the state's motion for leave to pursue a cross-appeal.

{¶ 49} The state assigns as error the following:

> The trial court erred by granting defendant jail time credit to which he was not entitled.

{¶ 50} In the present case, the trial court granted defendant 199 days of jail-time credit. The state contends that 150 of the 199 days of jail-time credit should not have been awarded to defendant because he was serving a prison sentence in another case during that time. We agree.

{¶ 51} " ' Although R.C. 2967.191 mandates that prison authorities credit an inmate with jail time already served, it is the responsibility of the trial court to make the factual determination as to the number of days of confinement that a defendant may receive.' " *State v. Williams,* 10th Dist. No. 16AP-540, 2017-Ohio-5598, ¶ 34, quoting *State v. Doyle,* 10th Dist. No. 12AP-567, 2013-Ohio-3262, ¶ 20. A trial court's determination regarding

---

[5] *But see State v. Garver,* 11th Dist. No. 2016-L-069, 2017-Ohio-1107, ¶ 6 (state's appeal of jail-time credit permitted pursuant to R.C. 2953.08(B)(2)).

jail-time credit is reviewed for an abuse of discretion. *State v. Dean,* 10th Dist. No. 14AP-173, 2014-Ohio-4361, ¶ 5. "An abuse of discretion occurs when a trial court's decision is 'unreasonable, arbitrary or unconscionable.' " *Id.,* quoting *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219 (1983).

{¶ 52} R.C. 2967.191 authorizes jail-time credit for "the total number of days that the prisoner was confined for any reason arising out of the offense for which the prisoner was convicted and sentenced." Thus, R.C. 2967.191 requires a connection between the jail-time confinement and the offense for which the offender is sentenced. *State v. Chandler,* 10th Dist. No. 10AP-972, 2011-Ohio-3485, ¶ 19, citing *State v. Slager,* 10th Dist. No. 08AP-581, 2009-Ohio-1804, ¶ 25. Therefore, " '[t]here is no jail-time credit for time served on unrelated offenses, even if that time served runs concurrently during the pre-detention phase of another matter.' " *Id.*, quoting *State v. Hunter,* 10th Dist. No. 08AP-183, 2008-Ohio-6962, ¶ 17.

{¶ 53} Defendant was arrested on the instant offense and placed in custody on May 1, 2015. He spent 10 days in jail before the case was dismissed. On October 7, 2016, he was indicted on the instant offense. On the same day, a warrant was issued as a detainer to the Noble Correctional Institution. On October 25, 2016, defendant was conveyed to Franklin County for arraignment on November 2, 2016. Appellant entered a not guilty plea and "passed on bond." (Nov. 2, 2016 Entry at 1.)

{¶ 54} The record includes multiple warrants to convey defendant from the Noble Correctional Institution or the Pickaway Correctional Institution to the Franklin County Correctional Center for various proceedings associated with the instant case. These warrants to convey reflect that defendant was at times in custody in Noble or Pickaway County and was at times in custody in Franklin County while this case was proceeding.

{¶ 55} Defendant eventually returned to Franklin County for a plea hearing on November 16, 2017. Following entry of his plea, defendant sought and was granted a recognizance bond and placed on house arrest. At the bond hearing, defendant's counsel noted that defendant would be "on PRC [postrelease control] as of Monday," which, in context, referred to November 20, 2017. Accordingly, at all times from indictment to plea in the present case, defendant was serving a prison term on an unrelated matter.

{¶ 56} After defendant was granted the recognizance bond, he absconded and a capias was issued on January 4, 2018. He was arrested on the outstanding capias on November 11, 2018.

{¶ 57} At the sentencing hearing, the state argued that defendant was entitled only to 49 days of jail-time credit – 10 days for his initial arrest pre-indictment and 39 days from the time the capias was served on November 11, 2018 until his sentencing on December 19, 2018. Defendant argued that he was entitled to 199 days of jail-time credit, which included "the additional 150 days he spent in the Franklin County jail with a pending case and he was unable to make bond on that." (Dec. 19 2018 Tr. at 27-28.) After confirming that defendant did not make bond in the present case, the trial court awarded defendant 199 days of jail-time credit.

{¶ 58} It appears that defendant was serving time in Noble or Pickaway County for an offense unrelated to this Franklin County case. The defendant does not contend otherwise. Accordingly, because defendant was serving a prison sentence in an unrelated case during the entire time he was awaiting trial in the present case, he is not entitled to receive credit for the 150 days he spent in the Franklin County Correctional Center pursuant to the conveyances. *Chandler*, 10th Dist. No. 10AP-972, 2011-Ohio-3485. Rather, he is entitled to only the 49 days of jail-time credit related to the present offense. The trial court thus abused its discretion in awarding defendant 150 days of jail-time credit to which he was not entitled.

{¶ 59} The state's cross-assignment of error is sustained.

{¶ 60} Having overruled defendant's three assignments of error and having sustained the state's cross-assignment of error, we affirm in part and reverse in part the judgment of the Franklin County Court of Common Pleas and remand the matter to that court with instructions to correct its award of jail-time credit in accordance with law and this decision.

*Judgment affirmed in part and reversed in part; case remanded with instructions.*

BROWN and NELSON, JJ., concur.